FILED

NOV 2 3 2021

CIRCUIT COURT RECORDS

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

MUSKEGON BNK INVESTORS, LLC )
)
    Plaintiff, )
)
v. )
) CASE NO. : 21-005123-CK
THE HUNTINGTON NATIONAL BANK, )
)     Case Assigned to:
    Defendant. ) Hon.   Timothy G. Hicks
)
)
)
)
)

Michael D. Almassian (P61478)
Nicholas S. Laue (P79260)
KELLER & ALMASSIAN, PLC
230 East Fulton Street
Grand Rapids, MI 49503
(616) 364-2100
*Attorneys for Plaintiff*

## COMPLAINT

*MCR 2.112(0) Statement: The case involves a business or commercial dispute as defined in MCL 600.8031 and the Court maintains a business court docket, and the case meets the statutory requirements to be assigned to the business court in accordance with MCL 600.8031(1)(c)(i).*

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

**COMES NOW** the Plaintiff, by and through their attorneys, and for its Complaint against the Defendant, states as follows:

1

## PARTIES

1. The Plaintiff, **Muskegon BNK Investors, LLC** ("Trust"), is a Michigan Limited Liability Company.

2. Defendant, the Huntington National Bank is a national banking association.

## JURISDICTION AND VENUE

3. The Circuit Court has original jurisdiction in civil acts when the amount in controversy exceeds $25,000. MCL 600.605; MCL 600.8301.

4. Venue is proper in this Court pursuant to MCL 600.1621(a).

5. The parties are subject to personal jurisdiction in this judicial circuit and contractually consented to this venue.

## FACTS

6. Plaintiff as landlord, and Defendant as tenant, entered into a commercial lease agreement dated December 16, 1998 ("Lease"). (Lease attached at **Exhibit 1**).

7. Defendant leased the real property, building and improvements located at 221 West Webster Avenue, Muskegon Michigan ("Property").

8. The Property includes a six-story, 43,000 square foot office building and one-story 480 square foot banking drive through building. The main building was completed in 1965.

9. Defendant occupied the Property as commercial office and banking center.

10. Defendant ceased operations at the Property in 2019.

11. The Lease term expired on December 31, 2020, and Defendant tendered the Property back to the Plaintiff at that time.

12. At all times the Plaintiff fulfilled its obligations under the terms of the Lease.

13. The Lease terms obligated Defendant to maintain and return the Property to the Plaintiff as follows:

SECTION 8.1 Maintenance and Repair. The Lessee, at its own expense, shall at all times, (a) maintain and operate the Property in a manner consistent with the standards of the operation and maintenance of a first class property of the type described in Schedule 1, in each case, subject to ordinary wear and tear; (b) maintain the Property in accordance with all Applicable Laws and Regulations, whether of not such maintenance requires structural modifications; (c) comply with the standards imposed by any insurance policies required to be maintained hereunder which are in effect at any time with respect to the Property or any part thereof: and (d) make all necessary or appropriate repairs, replacements and renewals of the Property which may be required to keep the Property in the condition required by the proceeding clause; (a), whether interior or exterior, structural or nonstructural, ordinary or extraordinary, foreseen or unforeseen. So long as all of the obligations contained in the foregoing clauses (a) though (d) have been satisfied and so long as no Monetary Default or Lease Event of Default shall have occurred and be continuing, the Lessee shall be entitled to sell any fixtures and equipment constituting a portion of the Property that may have been replaced in connection with the performance of the foregoing maintenance and care obligations and to retain any proceeds thereof. The Lessee waives any right that is may now have or hereafter Acquire (i) to require the Lessor to maintain, repair, replace, alter, remove or rebuild all or any part of the Property or (ii) to make repairs at the expense of the Lessor. All such repairs, restorations, refurbishments, and replacements shall be constructed and installed in a good and workmanlike manner in compliance with Applicable Laws and Regulations. All materials and equipment used or installed in connection with such repairs, restorations and replacements shall be at least equal in quality and standard to those then being utilized in first class properties of the type described in Schedule 1 in the metropolitan area in which the Property is located. In carrying out its obligations under this Section 8.1, the Lessee shall not discriminate in any way in the maintenance of the Property compared with other properties owned, managed or leased by the Lessee and shall operate the Property in a manner consistent with sound operating practices. (**Exhibit 1**).

14. The Lease defines Property as "Land together with Improvements thereon." Improvements is defined in the Lease as:

"Improvements" shall mean all buildings, structures, parking lots and other improvements now or hereafter located on the Land, including, without limitation, all Alterations to which the title has vested in the Lessor pursuant to the Lease and the foundations and footings thereof and all fixtures, including without limitation, all furnaces, boilers, machinery, engines, motors, compressors, elevators, fittings, piping, connectives, conduits, ducts, partitions, equipment and apparatus of every kind and description now or hereafter affixed or attached to any such buildings, structures or improvements to the extent the same constitutes real property or fixture under applicable law. (**Exhibit 1**).

15. Defendant breached the Lease by failing to maintain the Property in "first class" condition.

16. At the conclusion of the Lease Term, Defendant turned the Property over to Plaintiff with the following material breaches of Defendant's obligation to maintain the Property in first class condition:

(A). Delaminating and leaking windows and other building sealants; (See **Exhibit 2**)

(B). Antiquated and failing boiler system dating back to the original 1965 installation; (See **Exhibit 3**)

(C). An abandoned and non-functional chiller system; (See **Exhibit 4**)

(D). Electrical systems, boards, cabling and wires in disrepair; (See **Exhibit 5**)

(E). Dysfunctional fire suppression and alarm systems; (See **Exhibit 6**)

(F). Damaged, unfinished and stained walls and doors; (See **Exhibit 7**)

(G). Damaged and stained flooring and ceiling tiles; (See **Exhibit 8**)

(H). Crumbling interior stone and cement finishes; (See **Exhibit 9**)

(I). Failure to make ADA modifications;

(J). Deteriorated and leaking roofing system; (See **Exhibit 10**)

(K). Damaged and deteriorated bathrooms and plumbing; (See **Exhibit 11**)

(L). Obsolete elevator system.

17. The Property was returned to Plaintiff in such a state of disrepair that it was uninsurable. (See **Exhibit 6**).

18. Defendant's failure to maintain the Property consistent with the terms of the Lease amounts to a default under Section 15.1 which includes:

    SECTION 15.1 (d) the Lessee shall fail in any material respect any covenant, condition or agreement... and such failure shall continue for a period of thirty (30) days after written notice thereof... (**Exhibit 1**).

19. Plaintiff notified Defendant on March 30, 2020 that the Property had not been maintained consistent with the terms of the Lease and that substantial repairs and updates were required. (**Exhibit 12**).

20. Plaintiff provided Defendant with notice of default on October 23, 2020 and Defendant has failed to cure. (**Exhibit 13**).

21. Section 16.2 of the Lease provides for the survival of Defendant's obligations in the event of expiration, termination or repossession of the Property and permits Plaintiff to recover of all damages including reasonable legal fees and costs.

22. After the Property was tendered back to Plaintiff on December 31, 2020, Plaintiff demanded that Defendant fulfill its maintenance obligations or pay Plaintiff for the monetary value. Defendant has refused to do so.

23. On June 2, 2021, Plaintiff informed Defendant that it intended to sell the Property in the condition that existed at the end of the Lease Term to mitigate its damages and to provide Defendant with unrestricted access to the Property to gather evidence or evaluate the condition of the Property. (**Exhibit 14**). Defendant declined the invitation to evaluate the condition of the Property.

24. Plaintiff was therefore forced to sell the Property in a condition that resulted in a sale price that was less than it would have received if Defendant had properly maintained the Property.

25. Plaintiff sold the Property on June 30, 2021.

## COUNT I
## (BREACH OF CONTRACT)

26. Plaintiff adopts and incorporates by reference all preceding paragraphs to this Complaint as if fully set forth herein.

27. Plaintiff and Defendant entered into a valid and enforceable commercial lease agreement.

28. Plaintiff fulfilled its obligations under the terms of the Lease

29. Defendant materially breached the Lease by failing to maintain the Property in first class condition including but not limited to:

(A). Delaminating and leaking windows and other building sealants; (See **Exhibit 2**)

5

(B). Antiquated and failing boiler system dating back to the original 1965 installation; (See **Exhibit 3**)

(C). An abandoned and non-functional chiller system; (See **Exhibit 4**)

(D). Electrical systems, boards, cabling and wires in disrepair; (See **Exhibit 5**)

(E). Dysfunctional fire suppression and alarm systems; (See **Exhibit 6**)

(F). Damaged, unfinished and stained walls and doors; (See **Exhibit 7**)

(G). Damaged and stained flooring and ceiling tiles; (See **Exhibit 8**)

(H). Crumbling interior stone and cement finishes; (See **Exhibit 9**)

(I). Failure to make ADA modifications;

(J). Deteriorated and leaking roofing system; (See **Exhibit 10**)

(K). Damaged and deteriorated bathrooms and plumbing; (See **Exhibit 11**)

(L). Obsolete elevator system.

30. Defendant failed to cure its material breach after written notice.

31. As a direct and proximate result of those breaches, Plaintiff has sustained damages to be proved at trial that include but are not limited to, loss of value, loss of sale proceeds, attorney fees and costs.

**WHEREFORE**, Plaintiff seeks damages for the value of the repair and maintenance obligations that Defendant failed to fulfill plus fees, expenses, costs, and attorney's fees.

Dated: November 22, 2021

KELLER & ALMASSIAN, PLC

*/s/ Michael D. Almassian*

Michael D. Almassian (P61478)
Attorneys for Plaintiff
230 East Fulton Street
Grand Rapids, MI 49503
t. 616.364.2100

6